## GREEN, AD., V. BYRNE, AD.

1. ADMINISTRATION: *Ancillary administrator, duty of.*

   The office and duty of an ancillary administrator is to protect the rights of domestic creditors and pay their claims, to prevent the necessity of their having to follow the estate into a foreign jurisdiction, and to pay over any surplus in his hands, after paying home creditors, to the administrator of the domicile.

2. SAME: *Administrator de bonis non' no claim against former administrator.*

   An administrator *de bonis non* cannot call a former administrator to account for money in his hands. He and his sureties are liable only to the heirs, legatees and creditors.

APPEAL from *Miller* Circuit Court in Chancery.

Hon. C. E. MITCHEL, Circuit Judge.

*Scott & Jones, A. B. & R. B. Williams* and *B. B. Battle,* for appellants.

A court of equity, where it appears that the lands are in the possession of another, will not entertain a bill, nor grant relief, to remove a cloud from title; because the remedy is at law, by ejectment. *27 Ark., 414; 30 ib., 579; 37 ib., 643; 44 ib., 436; 43 ib., 28.*

Eighteen years having elapsed since the dissolution, by death, of the partnership, and no excuse being shown for the failure, any claim or demand to hold F. M. Ivy to account is stale. *85 Penn. St., 387; 61 Me., 38; 70 Me., 17; 1 How. (U. S.), 161; Wood on Lim., 116, 117, 122, 124.* The statute of limitation can be pleaded in equity by demurrer. *28 Ark., 27.*

All suits were barred, long before the commencement of this suit, against F. M. Ivy for account. *1 Edw. Chy. (N.*

*Y.*), *417; ib , 343; 3 Abb. (N. Y. Ct. App.*), *152; 43 Ark.,
469; Wood on Lim., 116, 117.*

The administrator or executor of the legatee (Wallace)
is the only party who can sue to collect his legacy. *31
Ark., 723; 21 ib., 164.*

Lands are assets in an administrator's hands for the pay-
ment of debts only; not to pay legacies. *Mansfield's Di-
gest, secs. 68, 170; 27 Ark., 235; 30 ib., 775; 21 ib., 62.*

Wallace's legacy is stale and barred. *Authorities sup.*

No debts are shown to have been duly authenticated and
probated against Ivy's estate within two years. *Mans-
field's Digest, secs. 98, 103.*

Probate courts have exclusive jurisdiction of the probate
of claims, and the charging of assets with debts, the sale
of lands to pay such debts, and the administration of
estates. Courts of equity have no such jurisdiction. *40
Ark., 438; 23 ib., 93; 34 ib., 63.*

The creditor's lien on the lands is dependent on his
claim and is barred and extinguished with the claim. *41
Ark., 523; 43 ib., 464.*

All right or claim to sell the lands for the payment of
debts or legacies is stale, eighteen years having elapsed
since the death of Thos. Ivy. *37 Ark., 155; 6 ib., 156; 7
Wheat., 63.*

There was no prayer for possession of the land, but
plaintiff took judgment therefor. Equity can afford him
no such relief. His remedy, if any, was by ejectment. *21
Ark., 62.*


*L. A. Byrne*, for appellee.

The eminent counsel for appellants insist that we have
mistaken our action; that a suit at law would have been
the proper remedy.

If this objection could be urged at all, it comes too late. A motion should have been made at the proper time to transfer to the law docket, or the objection will be treated as waived. *Mansfield's Digest, sec. 4927; 31 Ark., 411; 32 ib., 562; 37 ib., 185.* This objection cannot be raised by demurrer. *Cases supra.*

The only issue and judgment for review, is that for the possession of the lands, and let us see whether or not this is right.

It is a conceded proposition that no claims have been probated in this state. The court of probate of Texas has jurisdiction of these matters as well as the unpaid legacy. · This is evident when it is shown that the administration there awaits an administration here to realize upon the proceeds arising from the sale of the land made by the probate court here. If these unsatisfied demands are charges upon the real estate of the deceased, there is no other way of dealing with these demands.

The probate court of Texas cannot order a sale of land in this state.

In *42 Ark., 167*, Judge SMITH, in delivering the opinion of the case, said: "The duties of the ancillary administrator are to pay off the debts of the deceased proven here; to settle his accounts under the supervision of the court to which he owes his authority, and to transmit the residuum to the administration in chief for distribution among the persons beneficially entitled." See, also, the ruling of the court in *34 Ark., 117.* This is the sole object of the administration in this state, aided by this suit.

The counsel for appellant leaves untouched the question whether or not the legacy of Wallis is a charge upon the real estate of decedent.

This question has a material bearing on the case. A reference to the following authorities will conclusively set-

tle the question; *Redfield on Wills, vol. 2, 207 to 212; 54 Miss., 235; 77 N. C., 426; 85 N. Y., 142.*

And when land is so charged, it can be divested only upon payment of the legacy. *25 N. J. Eq., 95.*

The very terms of the will are conclusive. The residuary devisee, F. M. Ivy, was to take nothing until the legacy was paid off, and parties holding under him can claim no greater right than he had.

It is a well-established rule of law that a purchaser of land, charged with a legacy, from the residuary legatee or devisee, takes *cum onere,* and the land is subject to the payment of the legacy. *54 Vt., 253; 77 Ind., 437; 134 Mass., 543; 40 Ark., 433.*

An unpaid legacy stands in all respects as to the residuary legatee the same as an unpaid debt, and in delivering the opinion of the court in the case of *Hall et al. v. Brewer et al., supra,* Judge SMITH said: * * * "No question of purchase for value without notice is now before us. The bill does not admit that these purchasers are entitled to protection, and such a defense could only be presented by answer. But it may well be doubted whether the plea of a *bona fide* purchaser for value is available when the defects in the title arise out of a rule of law of which the defendant is bound to take notice"—citing *Woolworth* 340.

The legacy of Wallis and the debts, being a charge upon the lands of the deceased, his administrators have the right to the possession thereof until they are discharged, and the administration closed in the probate court. *42 Ark., 25.*

In this connection we shall answer the question asked by appellant's counsel in their brief: What right have we to sue for the legacy of Wallis? And says that his administrator is the proper party.

We have not for once denied this; nor are we attempting to sue for this legacy. Let the probate court administer this question after a court of equity has turned over to its administrator the possession of the land.

But before we can maintain this suit it must be shown that there is a necessity for it; that the estate is stil unadministered, and in doing this we show that there is an administration pending in the state of Texas, and an unpaid legaey and some debts—the exact amount is not known— probated and under the jurisdiction of the probate court of the state of Texas.

The appellants can take nothing but the interest of the residuary devisee, and as he is not entitled to anything until the debts and the legacy of Wallis are paid, the appellants have taken the estate prematurely and as they take these lands so charged, the courts of equity treat them as trustees. *40 Ark., 439; 83 Ind., 112.*

The appellants must either discharge these prior claims or surrender the land to a proper administration.

The residue, whatever it may be, they are entitled to as the interest of the residuary devisee.

The counsel in the brief for appellants insists lastly that whatever claims existed against this land for the payment of debts and legacies are, first, barred at law by the statute of limitations, and, secondly, in equity are stale demands. This is a question that cannot come into the determination of this suit, as the courts of the state of Texas will determine this, the forum where the debts and legacy are payable.

Granting that it is a proper question, the plea will not avail anything, for two reasons. First, because, as a matter of law, it is not barred, and, secondly, under the terms of the will the executor, Ivy, and those claiming under

him hold, as trustees of an express trust, to which the statute cannot be pleaded.

The records show that in the year 1877 F. M. Ivy, for the first time, filed his settlement with the probate court of Bowie county, showing that he had exhausted all the assets of the estate of Thomas, under the orders of that court, in the payment of debts. That he then had and held the possession of the land in controversy in his fiduciary capacity, until during the year 1879. That during that year he was dispossessed by *his creditors*, the appellants, claiming his interest as residuary devisee, and that in November, 1880, this suit was brought by the ancillary administrator of Thos. Ivy. This needs no argument. There is no peaceable, adverse possession extending beyond the statute bar.

The demand is not stale, referring exclusively to the legacy, for at no time has there been any funds in the hands of the executor with which the same could be paid.

*This question might be urged after there had been a distribution of the assets and the administration closed.*

The distributors of the legatee are guilty of no laches, for they at no time have had a cause of action against the executor and administrator. *40 Ark., 433.*

They stand waiting for the order of the probate court directing payment, and the court is powerless for the want of funds. All the residue of the decedent's property has been seized by the creditors of the residuary devisee, and the administration of the estate clogged

The appellant's possession is acquired by virtue of an express trust, to which, in a court of equity, the statute of limitation will not apply. *22 Ark., Wood on Lim., sec. 205; 200, note 1.*

Hon. SAM. W. WILLIAMS, Sp.. J.   In this case the appellee, filed his complaint against Francis M. Ivy, as executor of Thomas Ivy, B. W. Green, administrator *de bonis non* of W. W. Andrews, and others, in the circuit court of Miller county, in chancery, upon which original summonses were issued for the defendants, on the 11th day of November, 1880.   In the complaint the appellee describes himself " as administrator, with the will annexed of estate of Thomas Ivy, deceased, late of the county of Bowie and state of. Texas, duly appointed and qualified by the honorable the probate court in and for the county of Miller and state of Arkansas."   As no letters are attached, nor date of them given, we are not advised, by the transcript, as to the date, but infer from other matters apparent in the record, that the appointment had been made recently before the bringing of the suit. From the original and amended complaints and exhibits, upon which the case was decided below, on demurrer, it appears that Thomas Ivy, late of the county of Bowie and state of Texas, being seized of a large estate, both real and personal, situated in the states of Arkansas and Texas, on the 9th of December, 1857, made his last will, in which are the following provisions which are pertinent to this case, to-wit:

"*Firstly*—I desire all my just debts and liabilities to be paid by my executor hereinafter to be named.

"*Secondly*—I devise and bequeath unto my brother, Marion Francis Ivy, all the estate, right, title and interest in possession, reversion or remainder, which I, at this time, have, or shall have, of, in and to lands, tenements, hereditaments or annuities, or rents charged upon, or issuing out of them, whether situated in this the said county and state, Bowie county, Texas, or otherwise.   And I further bequeath and devise unto my brother, all the right,

title and interest, in possession, reversion or remainder, which I have at this time, or shall have, in or to any slaves or personal property whatever, whether the same is, or may be in this, the said county and state, or elsewhere; most of said estate consisting of lands and slaves and other personal property, situated and being in said county of Bowie, and in the county of Lafayette, in the state of Arkansas. I do bequeath unto my said brother, Marion Francis Ivy, the proceeds of all my choses in action, and my interest in all claims, of every description, in which I am or may be interested; provided that none of the above legacies and bequests shall interfere with or annul the legacies hereinafter to be mentioned and set forth in this my last will and testament.

" *Thirdly*—I bequeath and devise unto my nephew, Thomas H. Wallace, $5000, which I desire to be paid to him, either in money or property, by my said brother, out of my said estate, when he, the said Thomas H. Wallace, arrives at the age of twenty-one years.

" *Fourthly*—I hereby nominate and appoint my said brother, Marion Francis Ivy, the executor of this my last will and testament, and desire him to carry out the foregoing provisions, and to attend to all matters of my estate as he may deem best."

This will is duly attested by two witnesses, so as to make it a good will concerning real estate in Arkansas. Francis M. Ivy, called Marion Francis, in this will, proved this will, it is alleged, before the county court of Bowie county, Texas, a court having jurisdiction, though no record evidence of the probate is exhibited, and took out letters testamentary on the 24th of February, 1862, and fully administered the estate in said county in Texas, the domicile of testator. There is no allegation or evidence that the will and probate have ever been admitted to record in Arkansas,

.as prescribed by the statute regulating wills.  *Mansfield's Digest, secs. 6513, 6531, 6532, 6534.*

The testator departed this life on or about the 15th day of January, 1862, shortly before the probate of his will. That the executor has never made his final settlement with the Texas court; that his administration was still open, awaiting the result of an ancillary administration to be had in the state of Arkansas, where the largest and most valuable portion of the estate of testator, realty, was .and is situated, then in Lafayette, now in Miller county, in said state ; and remained wholly and entirely unadministered by any court of competent jurisdiction in Arkansas.   That testator, and his brother, Francis M., at the time of testator's death, were partners in the business of farming in the county of Lafayette, now in Miller.   That the slaves were emancipated.   That certain lands belonged to the testator in his own right, and he had an undivided half interest in others with Francis M.   That William W. Andrews, on the 31st of October, 1865, filed his complaint, and had a writ of attachment issued against Francis M. Ivy, from the circuit court of Lafayette county, which was, on the 4th of November, 1865, levied upon portions of this land.   On the 22d of November, 1867, Andrews recovered judgment against Francis M. Ivy, and on the 8th of November, 1871, the judgment was revived; and on the 15th day of October, 1875, a *ven. ex.* was issued on this judgment, directed to the sheriff of Miller county ; and on the 9th day of December the lands were sold *in solido*, and not in legal subdivisions, and Martha J. Andrews, as the administratrix of W. W. Andrews, became the purchaser.   Before this sale, Francis M. Ivy, on the 1st day of May, 1875, mortgaged the lands, which were devised to him by Thomas Ivy, to Wm. B. Crabtree, reserving in the mortgage, the right to 160

acres, as a homestead. · That Crabtree well knew the con-
dition of the lands, and the interest of the estate of
Thomas Ivy, at the time the mortgage was executed. That
the notes secured by the mortgage were assigned, by Crab-
tree, to K. Mandel & Co., of Jefferson, Texas. That
suit was brought, in the Miller circuit court, March term,
1879, to foreclose this mortgage, by Mandel & Co., against
F. M. Ivy, Henry Moore, as assignee in bankruptcy of
Francis M. Ivy, Crabtree, James Kelly and Mrs. Andrews,
and B. W. Green, administrator, *de bonis non* of W. W.
Andrews. That a decree was rendered and an order made
to sell land to satisfy it. That under this decree the lands
which had belonged to Thomas Ivy, as well as those in
which he had an undivided interest, were sold on the 7th
of June, 1879, and were bought by William R. Kelly,
who appears to have bought in trust for Mandel & Co.,
and B. W. Green, as administrator *de bonis non*, of An-
drews' estate. That on the 1st of December, 1875, Fran-
cis M. Ivy, on his own petition, was declared a bankrupt,
by the district court of the United States for the eastern
district of Arkansas. That he scheduled these lands of
Thomas Ivy as his, as residuary devisee subject to the
payment of testator's debts and the legacy to Wallace,
and subject to his own mortgage to Crabtree. That
Henry Moore was appointed assignee in bankruptcy of
the estate of Francis M. Ivy, the bankrupt, who sold all
the interest of the bankrupt in the lands embraced in the
schedule, and James Kelly purchased them. That Kelly,
afterwards died, and John A. Roberts was appointed ad-
ministrator, and as such, it was charged, was setting up
some claim to the land. That Kelly, in his lifetime, did
not pay the assignee the purchase money, nor has his ad-
ministrator, since. Kelly's heirs are not named or made
parties.

That Thomas H. Wallace, to whom testator bequeathed the sum of $5,000, departed this life on or about the 1st day of April, 1862, aged about twenty-two years. His heirs are named, but as this legacy is personalty, and a chose in action, the heirs, as such, cannot recover it. There has never been any administration of Wallace's estate. The complaint further states, that the legacy to Wallace was not paid to him in his lifetime, nor has it been paid to "his heirs" since. It is stated, in general terms, in the complaint, that there are unpaid claims against the estate of the testator; that the estate, real and personal, in Texas has been exhausted and applied to the payment of partnership debts, and individual debts of Thomas Ivy; and all the personal property in Arkansas has been sold and so applied, and nothing is left to pay said legacy and indebtedness, except the Arkansas lands. The prayer of the complaint is, that all of the sales, in so far as they attempted to dispose of any lands belonging to the estate of Thomas Ivy, deceased, be declared void, set aside and held for naught; that William R. Kelly, now acting as trustee for K. Mandel & Co., and for B. W. Green, as administrator, etc., or some other suitable person, be appointed receiver, with authority to take charge of said lands belonging to said estate during the pendency of this suit, to rent out the lands, collect the rents and hold the same, with the money he may have on hand, as such trustee, subject to the order of the court, and to do and perform all orders and duties that may be required of him by the court; that the defendant, Francis M. Ivy, as surviving partner of Thomas Ivy, may be required to discover and set forth a full, true and particular account of all and singular the partnership property and every part thereof which has been possessed by him, or come into his hands, or to the hands of any other person or persons by his or-

·der, or for his use, with the particular nature, quality or qualities, and true value thereof, respectively, and how the same and every part thereof has been applied and disposed of; and that he also be required to set forth an account of the debts due from and to the testator, and what legacies, if any, have been paid, and to whom, and whether any such debts are now outstanding, and why; that the said B. W. Green, as administrator, etc., and John A. Roberts, as administrator, etc., may be required by order of this court to render a true, full and particular account of all and every sum or sums of money which has or have been received by them, or either of them, or any other person by their or either of their orders, for and in respect of the rents and profits of said estate, or any part thereof; and that plaintiff have judgment therefor, and for such other and further relief as to justice and equity may appertain.

The plaintiff filed an amendment to his complaint, making the heirs of W. W. Andrews parties, and stating that they claimed to own the lands under these several sales. And in response to a motion to make the complaint more specific, as to debts due from Thomas Ivy, in this amendment, it is stated "that the plaintiff has been informed by the executor of the last will and testament of Thomas Ivy, deceased, in and subject to the jurisdiction of the laws of the state of Texas, there are subsisting and unliquidated debts and liabilities against the estate of Thomas Ivy, deceased, but *to what extent, to what amount, and the nature and class of the same, plaintiff is not sufficiently informed with certainty.*" This amendment sets out with useless particularity the names of the heirs of Wallace. As they could not sue for this legacy, and it must be collected, if at all, through an administrator on Wallace's estate, this was unnecessary. It sets out more minutely

the manner of administering the estate in Texas, and exhibits the executor's reports to the county court of Bowie county, and shows specifically the full administration of the assets there, which makes it more remarkable that the debts of the estate, if probated there, could not have been specified better than upon *general information.* The amendment further states, that the sales of the lands set out in the original complaint were made for the personal and individual debts of Francis M. Ivy. That these Arkansas lands are the only assets of the estate of Thomas Ivy remaining unadministered, out of which to pay Wallace's legacy, and that the administrator and heirs of W. W. Andrews held possession of these lands under and by virtue of the sales set forth in the original complaint.

The circuit court of Miller county overruled a demurrer of defendants to the complaint and amendment, and after finding the facts, decreed that all the several sales of the lands be annulled, set aside and held for naught, and for recovery and possession of the land. It was further decreed that the lands were assets in the hands of Byrne, the administrator, for payment of debts and lawful demands of said estate, and that he proceed with said administration to a final settlement thereof, under the orders of the probate court of Miller county, and that he recover costs.

This plaintiff was an ancillary administrator in Arkansas. The office and duty of such administrator is to protect the rights of domestic creditors and pay their claims, to prevent the necessity of their having to follow the estate into a foreign jurisdiction, and to pay over any surplus in his hands, after paying home creditors, to the administrator of the domicile. *Shegog v. Perkins et al., 31 Ark., 539; Williamson v. Furbush, 31 Ark., 539; Gibson, ad., v. Dowell, 42 Ark., 164; Clark v. Holt, 16 Ark., 257; Duval v. Marshall, 30 ib., 231.*

1. ANCILLARY ADMINISTRATOR: His duty.

30–46

This suit seems to reverse the usual order. It is an effort to transfer an unfinished administration to Arkansas for completion, and to call the administrator of the domicile to account as surviving partner of the testator, when it is well settled that an administrator *de bonis non* cannot call the former administrator to account for money in his hands, and he is responsible for that alone to the creditors, distributees and legatees for account and upon his bond. *Williams v. Cubage, 36 Ark., 307; Finn v. Hempstead, 24 Ark., 117; Oliver v. Rottaken, 34 Ark., 144.*

A surviving partner when administrator, or executor, it would seem, must settle with the court to whose jurisdiction he belongs, unless some peculiar circumstances existed, as where there are domestic creditors, and the assets under the control of the surviving partner were within the jurisdiction of the court which granted the ancillary administration and were liable to be wasted or to misapplication by the surviving partner; then, it would seem that an ancillary administrator might call upon equity for a receiver or invoke the ordinary remedies which administrators may ask, in a proper case, against a surviving partner who was wasting or misapplying partnership assets. But no such case appears here. It is not pretended that Francis M. Ivy has any unconverted partnership assets. This feature of the case, calling for an account, seems to have been abandoned at the hearing, and is expressly abandoned here, by plaintiff in his brief.

As to debts in Texas, we shall treat the general allegation just like a general allegation of fraud, without specifications. It will not be presumed that any probate court would grant an order to sell real estate and divest the heir or devisee, or those claiming under them, of title, on the statement that the administrator was "informed that there were unpaid debts." But this court will not collaterally

inquire into, or question the power and jurisdiction of the probate court to grant administration. That court might err in improperly granting administration, but we could only review it on appeal or writ of error. But it might be a question for us to determine now and here, whether collateral aid shall be granted to an unnecessary administration. For in this case the will charges the legacy upon the land and there seems to be no necessity for an administration on Ivy's estate to collect Wallace's legacy, if lapse of time has not barred it. The lands devised to Francis M. Ivy, it seems, went into his hands clothed with an express trust, and when the personal assets are exhausted, it might be subjected, if not before, to the payment of this legacy. *West v. Williams, 15 Ark., 682.* And it has been held that where lands are devised, charged with the payment of a legacy, that the legatee may proceed against the lands *in rem.*, without waiting for the executor to exhaust the personal assets. *Sand v. Champlin, 1 Story Rep., 326.* See, also, *Wright v. Den, 10 Wheaton, 204; Lewis v. Darling, 16 Howard (U. S.), 1; 2 Binney Rep., 525; 6 ib., 395; Redfield on Wills, chap. 13, sec. 57, par. 7, 8, 9, 10, p. p. 558–9.*

It would seem from the drift of authorities that even where the personalty has been exhausted, in payment of debts, leaving a legacy unpaid, for which the realty might have been liable, the legatee has a right of subrogation against the heir, and to subject the realty, or compel contribution in equity. This seems to be a well-established branch of equity jurisdiction. *1 Story Eq. Jur., sec. 565.* It is true that it has been held in New York, under its peculiar statutes, that where an executor, who is the devisee of realty, has exhausted the personal estate in paying debts, the legatee of an unpaid legacy, is not, on that account, entitled to a priority over legal liens which other creditors of the executor have acquired upon such

realty, by judgment. *Wilkins v. Harper, 2 Barber, N. Y., ch. 338.* Same case affirmed by court of appeals, *1 N. Y., 586.*

The application of this principle in Arkansas may well be doubted where our laws make realty assets in the hands of an administrator, subject to debts, with right of possession, and to rents and profits in the administrator. While it is true the personalty is the primary fund· out of which debts are paid, yet, in some sense, their payment out of the personal estate is in exoneration of the realty, and that would seem, upon ordinary equitable principles, to give to an unpaid legatee a right of subrogation, in this state, even where the legacy was not charged on the realty. That was not, however, a question in the New York case, which involved a mere contention for priority, between the judgment creditor of the devisee, and the legatee whose legacy was not charged on the land devised. In the case of *Hall v. Brewer, 40 Ark., 434,* a bill was filed by a fourth-class creditor, whose claim had been in litigation during the entire pendency of the administration, and when the creditor recovered judgment, and had his claim classed, the administration had been closed and the land turned over to the heirs and the personal property distributed. This court held that the death of a decedent fixes a lien upon lands for the payment of debts, and they pass to his heirs and devisees charged with such debts, and where a creditor's debt has been duly probated and not paid, or has come into existence too late to be probated, or after the administration has been closed, he may, in equity subject them in the hands of the heirs or devisees or their alienees with notice, to payment of the debts. The same principal was settled in *Wilson v. Harris, 13 Ark.* Under the authority of these cases, and others like them, it would seem that the remedy of the

legatee and Texas creditors, if any, was complete in equity without the expensive and tedious process of an Arkansas administration, and in a tribunal fully competent to marshal assets, settle priorities, remove clouds and grant final relief. But in this case, no party entitled to this relief is before the court as plaintiff or defendant. Nothing remains tangible in this case, as a reason for administering the Arkansas lands, but Wallace's legacy, as no specific debts are shown. That legacy was allowed to remain uninforced for over eighteen years, before the complaint was filed, and now, at the end of twenty-four years, as far as we are informed, no administrator has ever been appointed on his estate, and yet no one but an administrator could collect or give to Thomas Ivy's administrator a lawful acquittance for this legacy. *Lemore v. Rector, 15 Ark., 436; Pope v. Boyd, 22 Ark., 535; Anthony v. Peay, 18 Ark., 30; Worsham v. Field, ib., 448; Pryor v. Ryburn, 16 Ark., 672; Slocum v. Blackburn, 18 Ark., 319; Atkins v. Guice, 21 ib., 173; Martin v. Tyree, 41 ib., 314.*

These questions, which are suggested, and not directly presented, in this case, would properly arise whenever an administrator of Wallace's estate, or any unpaid creditor of Thomas Ivy, with properly established and authenticated claims from the Texas tribunal, shall present their complaint, in equity, to subject the lands, devised to Francis M. Ivy, to the charge of the unpaid debts and legacy. Then it will be time enough to determine whether Francis M. Ivy, and those claiming under him, hold the lands in trust, subject to debts and legacies, or whether they hold adversely. Also, whether or not they are innocent purchasers, and whether or not the demands are stale, or barred by limitation.

All that it is necessary to decide, and all we do decide, now, is:

*First*—In advance of the presentation of a copy of the will and probate thereof, duly certified to the probate court of the county in Arkansas where the lands of Thomas Ivy lie, and the order of that court that the will shall be recognized and admitted of record as wills in this state are recorded, as provided in *sections 6532–3, Mansfield's Digest.* In advance of the establishment in the probate court, granting the ancillary letters, of unpaid debts and legacies, by certified transcripts or otherwise; and after so great lapse of time, it is not to be presumed that any probate court would cloud the title of lands of a citizen of this state by granting an order to sell. *Mays v. Rogers, 37 Ark., 155; Stewart v. Smiley, Mans. Op.*

*Second*—Until some reason or necessity is shown more than appears in this record, the plaintiff below is not entitled to bring any possessory action for the lands in advance of an order to sell.

*Third*—That, while it is true, as contended, that if a plaintiff is entitled to any relief, it should not be denied him because he may have mistaken the tribunal, yet, as the plaintiff does not show that he is entitled to the relief prayed for, the court was not bound to change the whole object and scope of his complaint, in order to grant relief as at law, even if he had been entitled to a judgment for possession.

For these reasons, the decree of the court below is erroneous, the plaintiff below having shown no ground for either equitable or legal relief. The decree is reversed, and a decree will be entered here dismissing the complaint and for costs.

Hon. B. B. BATTLE did not sit in this case.